UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Charles Schell, | : | Case No. 4:08CV0640 |
| | : | |
| Plaintiff | : | Judge Donald C. Nugent |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

In this action brought under 42 U.S.C. §§405(g) and 1383(c)(3) the plaintiff seeks judicial review of the defendant's final determination denying his applications for disability insurance benefits (DIB), 42 U.S.C. §416(i), 423, and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq. Those applications were filed on April 27, 2004, and claimed an onset date of disability of December 24, 2003.[1]

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on December 11, 2006. Also testifying at that proceeding a medical expert, Dr. Gottfried Spring, and a vocational expert, Mr. Mack Anderson.

---

[1] Although the record is certified as "a full and accurate transcript of the entire record of proceedings related to this case" it does not contain a copy of a Disability Report-Adult, which this Court is aware is completed at the time of application and which calls for a statement of the impairment[s] which underlie the clam of disability and the manner in which the impairment[s] limit the claimant's ability to work.

At that hearing the plaintiff ascribed his professed inability to work to a combination of physical, i.e., exertional, and mental/emotional, i.e., non-exertional, impairments.[2]

On the physical side, the plaintiff testified that first he injured his back in 1994, but continued to work at his job, which was at the medium level, until 2003, when his back pain worsened to the point where he could no longer do so.

On the mental/emotional side the plaintiff testified that before the time he stopped working he developed "temper problems, getting in fights for no reason," both with other employees and members of his family. He stated that he had been in mental health counseling for three years, but that he was still uncomfortable around others—"To be honest with you, I don't even want to go out of the house. I don't like being around people. I don't even feel comfortable being here."

Dr. Spring testified that based upon his review of the plaintiff's medical records he believed that on the physical side nothing definitive hd been identified—"general neurological is intact"—and opined that the plaintiff should be functionally capable of light work.

With regard to the plaintiff's mental/emotional status, Dr. Gottfried stated that "He typically is diagnosed as either major depressive disorder, bipolar disorder." He testified that the plaintiff was primarily seen by mental health counselors and that they had consistently evaluated the plaintiff with GAF ratings of 45 down to 40, which would place the plaintiff in the category of suffering from a serious mental/emotional impairment.[3] He further stated, however, that from the counseling records he considered the descriptions of the plaintiff's activities not at that level of severity:

---

[2]At the outset of the hearing plaintiff's counsel stated that "I believe that there is [sic] two severe impairments. One is an affective disorder. Secondly, there is low back pain. I believe that the affective disorder is of greater severity than the low back pain."

[3]A GAF of 40 to 49 connotes "major impairments in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work...).

2

> Q. [ALJ] Okay, Doctor, well, anything else, doctor?
>
> A. Well, in general the descriptions are mild to moderate impairment. The GAF's severe.
>
> Q. The GAF suggests something more than the descriptions.
>
> A. Yeah, the —
>
> Q. — if moderate or —
>
> A. The values of the GAF's definitely in the severe range—
>
> Q. And—
>
> A. —and the descriptive and general assessments seem in the mild to moderate range. So there is a split there kind of.

He then opined that "I would say that he falls into the category of simple, low stress work in a people scant environment, low stress including no concentration of work or quotas, production quotas.

In examining the vocational expert the ALJ propounded the following hypothetical question:

> Q. Very well. Please assume the existence of the following hypothetical worker: 52 years of age, 50 at onset, ninth—completed the ninth grade in school; able to lift and carry 20 pounds occasionally, 10 pounds frequently; able to stand and walk six hours in an eight-hour period; sit six hours in an eight-hour period. Postural limitations: occasional balancing. Let's say never stooping, occasional kneeling, occasional crouching and never crawling. Psychological limitations: limited to a low stress environment defined as permitting occasional decision making, occasional changes in work setting and the occasional exercise of judgment, no production rate pace work. Social interaction—limited social interaction to occasional for both public and co-workers and limited to superficial non-confrontational, no arbitration and no negotiation and hold one second. And limit—add an additional limitation for simple, routine, repetitive tasks. Assume that the individual's education does not permit direct entry into skilled work with minimal orientation. Mr. Anderson, could such a hypothetical worker do the job that you

3

have identified as Mr. Schell's past work?

In response the witness testified that the plaintiff could not perform any of his past jobs, but further testified that there were other jobs at the light level the plaintiff could perform.

When examined by plaintiff's counsel Mr. Anderson testified:

> Q. I wasn't clear about that. If we added to the judge's hypothetical factor or hypothetical questions the factors of GAF of 45 or 40 which I believe the doctor—Dr. Spring had testified would indicate a more severe impairment and if I define that as a more severe impairment as interfering more than one-third of the time with his ability to sustain competitive work, would that hypothetical individual be able to perform the types of jobs you gave us?
>
> A. Not the way that—not with the additional hypothetical. If they're off task a third of the time, then they're not going to be employable.
>
> ALJ: Is that how you're defining that, Mr. McNally, that the claimant would be off task—
>
> ATTY: Yes, Your—
>
> ALJ: —up to—
>
> ATTY: —Honor.
>
> ALJ: —one-third of the time?
>
> ATTY: One-third—
>
> ALJ: Okay.
>
> ATTY: —of the time.
>
> ALJ: Okay. Go ahead. And, Mr. Anderson, to clarify your testimony is there would be no jobs available?
>
> VE: There would be no jobs.

4

On December 28, 2006 the ALJ entered his opinion denying plaintiff's claims. That decision became defendant's final determination upon denial of review by the Appeals Council on January 28, 2008. The ALJ's "Findings" were:

1. The claimant met the disability status requirements of the Act on December 24, 2003, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful work activity since 2003.

3. The medical evidence establishes that the claimant has severe major depressive disorder/bipolar disorder; personality disorder; a history of GERD; and back pain, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant has an underlying medically determinable impairment which could reasonably cause pain or other symptoms. However, the claimant's allegations of pain and limitations have been carefully evaluated pursuant to Social Security Ruling 96-7p and are found to be not credible to the extent alleged.

5. The claimant was born December 9, 1953, and is currently 53 years of age.

6. The claimant has completed the ninth grade.

7. The claimant retains the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk 6 hours out of an 8 hour day; with the occasional use of stairs; never ladders, ropes, or scaffolds; occasional balancing, kneeling, and crouching; never stooping or crawling; limited to simple, routine, repetitive tasks in a low stress environment with occasional decisionmaking, occasional changes in the work setting, occasional exercise in judgment, no production rate pace work with occasional social interaction with the public and coworkers further described as superficial and nonconfrontational with no arbitration and no negotiation.

8. Based on an exertional capacity for light work, the claimant's age,

> education, and work experience, Section 404.1569 of Regulation No. 4 and Section 416.969 of Regulations No. 16 and Rule 202.11, Table 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of not disabled.

9. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using the above, cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform, including work as an inspector and hand packager; assembler of small products; and finish inspector.  These jobs exist in significant numbers in the economy.

10. The claimant was not under a disability as defined in the Social Security Act at any time through the date of this decision.

Plaintiff's (not clearly articulated) claim of error rests upon his counsel's examination of the vocational expert, quoted above.  It is argued that:

> The ALJ never discussed these additional factors [the GAF ratings] in his decision; nor did he mention counsel's questioning of the V.E.  The A.L.J. never accepted it, rejected it or even acknowledged that line of questioning.
>
> As the A.L.J. has a duty to consider and evaluate the entire Record, he failed in that duty.  If he had discussed it and weighed it, that would be one thing; here he did nothing.
>
> As he did not, the V.E.'s answers to counsel's questioning are unrebutted.

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967).  This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972).  Rather "[t]he findings of the Secretary as to any fact,

6

> if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

The problem this Court has with the ALJ's decision is that this Court cannot tell from the body of that decision what evidence the ALJ relied upon in finding the plaintiff not disabled.

The "Evaluation of the Evidence" portion of the ALJ's decision is five pages and three lines in length. The first three and a half pages are a recitation (or regurgitation) of the evidence in the file, including resumes of the testimony of Dr. Spring and Mr. Anderson but not a single mention of the testimony of the plaintiff. Also noticeably missing from this recitation is any mention of the GAF scores which have been assigned the plaintiff by his treating mental health professionals.

The next portion, covering roughly one page, essentially sets out the pertinent Social Security regulations.

That is followed by:

> . . . The Medical Expert had testified that the claimant may have some radiculopathy. Dr. Spring specifically noted that there was nothing more definitive identified. Neurological was intact. Dr. Spring noted that the claimant was diagnosed with major depressive disorder/bipolar disorder. Anger management had been recommended. The claimant receives ongoing counseling and has for

7

many years. In view of the claimant's testimony, the clinical findings, and taking into consideration Social Security Ruling 96-7p, the preponderance of the evidence shows that allegations of pain and limitations which would preclude the performance of substantial gainful work activity are not credible.

The regulations provide a basis for determining the claimant's capacity for other work in view of his age, education, relevant work experience and established residual functional capacity. It includes notice of the existence of unskilled jobs at the various levels of exertion and states that the rules promulgated direct a conclusion of "disabled" or "not disabled" where the record shows solely exertional limitations and the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a rule. In assessing the evidence in a light most favorable to the claimant, the Administrative Law Judge is of the opinion that the claimant retains the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, with the ability to stand and walk 6 hours in an 8 hour day; the ability to sit 6 hours in an 8 hour day; with occasional use of stairs; never ladders, scaffolds, or ropes; occasional balancing, kneeling and crouching; never stooping or crawling; limited to a loss stress environment with occasional decisionmaking, occasional changes in the work setting, occasional exercise in judgment, no production rate pace work; with occasional social interaction with the public and coworkers further described as superficial and nonconfrontational with no arbitration and no negotiation; and further limited to the performance of simple, routine, repetitive tasks.

Assuming the claimant was capable of performing a full range of light exertion, Rule 202.11, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a finding of not disabled. The Administrative Law Judge must further take into consideration the additional limitations, as described above. Despite these additional limitations, the Vocational Expert identified jobs which such an individual could perform which exist in significant numbers in the economy.

Therefore, the Administrative Law Judge finds that the claimant was not disabled at any time through the date of this decision for purposes of entitlement to a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income Benefits.

This Court is completely unable to ascertain how the ALJ moved from his incomplete

restatement of the evidence to his conclusions that the plaintiff is not credible and/or that the plaintiff remains capable of work activities as set out in his decision. There is nothing between point A and point B reflective of the ALJ's thought processes. Absent that bridge this Court cannot come to an informed conclusion as to whether the ALJ's holding that the plaintiff is not disabled is supported by substantial evidence. It is not the function of a reviewing court to guess at what reasoning an ALJ applied. It is the duty o the ALJ to articulate that reasoning. This Court is in complete agreement with the following:

> The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.#d.2d 842 (1971). The court may not "decide facts anew, reweigh the evidence, or substitute its judgment for that of the Social Security Administration." *Binion*, 108 F.3d at 782. Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id*. Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Id*.
>
> Though the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). For the court to affirm a denial of benefits, the ALJ must have articulated the reasons for his decision at "some minimum level." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). This means the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Id*. Although the ALJ need not address every piece of evidence, he cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his finding and afford the claimant a meaningful judicial review. *Scott*, 297 F.3d at 595. The court must remand a case where the Commissioner's decision "lacks evidentiary support or is so poorly

9

>articulated as to prevent meaningful review."
>
> *   *   *
>
>Under Social Security Ruling 96-7p, the ALJ's determination or decision regarding claimant credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001). In this regard it is not sufficient for the adjudicator to make a single conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p; <u>Zurawski, 245 F.3d at 887</u>. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. SR 96-7p; <u>Zurawski, 245 F.3d at 887</u>.

<u>Groneman v. Barnhart</u>, 2007 U.S. Dist. Lexis 17230 (N.D. Ill. 2007), slip opinion pp 24-26, 28-29.

In arguing in support of the ALJ's decision defendant asserts "We have already explained that the ALJ reasonably accepted the opinion of Dr. Spring, the medical expert, who explained that the GAF scores given to Mr. Schell by his therapists were inconsistent with their treatment notes." The fatal flaw in this position is that nowhere in his decision did the ALJ say he was relying upon that testimony. In fact, nowhere in his Evaluation of the Evidence did the ALJ mention that testimony and, as previously noted, there is also no mention of the GAF scores assigned to the plaintiff by his treating mental health professionals.

As should be obvious from the foregoing, in this Court's opinion the defendant's final determination cannot stand.

On the other hand, this Court does not believe that the record compels the conclusion that the plaintiff is disabled, which negates granting the plaintiff the final judgment he seeks.

It is, accordingly, recommended that the defendant's final decision be vacated and the action

remanded pursuant to the fourth sentence of 42 U.S.C. 405(g) for further proceedings.

s/DAVID S. PERELMAN<br>
United States Magistrate Judge

DATE:   January 14, 2009

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).